THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARIA STAPLETON, JUDITH LUKAS, SHARON ROBERTS and ANTOINE FOX on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Advocate Plan, | ) ) ) ) ) | Civil No. 14-cv-01873 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| ADVOCATE HEALTH CARE NETWORK AND SUBSIDIARIES, an Illinois Non-profit Corporation, ADVOCATE HEALTH CARE NETWORK, an Illinois Non-profit Corporation, KEVIN R. BRADY, an individual, THE BENEFIT PLAN ADMINISTRATIVE COMMITTEE FOR CHURCH PLANS OF ADVOCATE HEALTH CARE NETWORK, JOHN and JANE DOES 1-20, MEMBERS OF THE BENEFIT PLAN ADMINISTRATIVE COMMITTEE FOR CHURCH PLANS OF ADVOCATE HEALTH CARE NETWORK, each an individual, THE COMPENSATION AND BENEFITS COMMITTEE OF THE BOARD OF DIRECTORS OF ADVOCATE HEALTH CARE NETWORK, JOHN AND JANE DOES 21-40, MEMBERS OF THE COMPENSATION AND BENEFITS COMMITTEE OF THE BOARD OF DIRECTORS OF ADVOCATE HEALTH CARE NETWORK, each an individual, and JOHN and JANE DOES 41-60, each an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLAIM OF UNCONSTITUTIONALITY** **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) ) ) ) | |
| | ) | |

1860136.1

**Table of Contents**

I.     INTRODUCTION .................................................................................................... 1

II.    JURISDICTION AND VENUE ............................................................................. 4

III.   PARTIES ................................................................................................................ 5

       A.    Plaintiffs .................................................................................................... 5

       B.    Defendants ................................................................................................ 6

IV.    THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ................................ 8

       A.    The Adoption of ERISA ............................................................................ 8

       B.    The Scope of the Church Plan Exemption in 1974 ................................. 9

       C.    The Changes to the Church Plan Exemption in 1980 ........................... 10

V.     Advocate ............................................................................................................ 14

       A.    Advocate's Operations ........................................................................... 14

       B.    The Advocate Plan ................................................................................. 16

             1.    The Advocate Plan Meets the Definition of an ERISA
                   Defined Benefit Plan ..................................................................... 16

             2.    The Defendants Meet the Definition of ERISA Fiduciaries ................. 17

                   a.    Nature of Fiduciary Status ................................................. 17

                   b.    Defendants Are Each ERISA Fiduciaries ................................. 19

             3.    The Advocate Plan Is Not a Church Plan ................................. 22

                   a.    Only Two Types of Plans May Qualify as Church
                         Plans and the Advocate Plan is Neither ...................................... 22

                   b.    Even *if* the Advocate Plan Could Otherwise Qualify
                         as a Church Plan under ERISA §§ 3(33)(A) or
                         (C)(i), it is Excluded From Church Plan Status
                         under ERISA § 3(33)(B)(ii) ........................................................ 27

        c.      Even if the Advocate Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Advocate, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective ................................................................................ 28

VI.    CLASS ALLEGATIONS ...................................................... 29

    A.    Numerosity ...................................................................... 30

    B.    Commonality .................................................................. 30

    C.    Typicality ....................................................................... 30

    D.    Adequacy ....................................................................... 31

    E.    Rule 23(b)(1) Requirements ........................................... 31

    F.    Rule 23(b)(2) Requirements ........................................... 32

    G.    Rule 23(b)(3) Requirements ........................................... 32

VII.    CAUSES OF ACTION ......................................................... 33

    COUNT I ................................................................................ 33

        (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Advocate, AHCN, Defendant Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants)................................... 33

    COUNT II ............................................................................... 34

        (Claim for Violation of ERISA § 203 and for Equitable Relief Pursuant to ERISA § 502(a)(3) Against Defendant Advocate, and Pursuant to ERISA § 502(a)(2) Against Defendants Advocate, AHCN, Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants) ....................................................... 34

    COUNT III .............................................................................. 37

(Claim for Violation of Reporting and Disclosure Provisions
Against Defendant Advocate Plan Administrative
Committee and John and Jane Does 1-20, the Advocate
Plan Administrative Committee Member Defendants) .......................... 37

1.      Summary Plan Descriptions .................................................... 37

2.      Annual Reports ...................................................................... 37

3.      Summary Annual Reports ....................................................... 38

4.      Notification of Failure to Meet Minimum Funding ............... 38

5.      Funding Notices ..................................................................... 39

6.      Pension Benefit Statements .................................................... 40

COUNT IV ...................................................................................................... 40

(Claim for Failure to Provide Minimum Funding Against
Defendant Advocate) .............................................................. 40

COUNT V ....................................................................................................... 41

(Claim for Failure to Establish the Plan Pursuant to a Written
Instrument Meeting the Requirements of ERISA § 402
Against Defendant Advocate) .................................................. 41

COUNT VI ...................................................................................................... 42

(Claim for Failure to Establish a Trust Meeting the Requirements
of ERISA § 403 Against Defendant Advocate) ....................... 42

COUNT VII ..................................................................................................... 42

(Claim for Clarification of Future Benefits Under ERISA §§
502(a)(1)(B) and 502(a)(3) Against Defendant Advocate) .................. 42

COUNT VIII .................................................................................................... 43

(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
Against Defendant Advocate, Defendant Advocate Plan
Administrative Committee, and John and Jane Does 1-20,
the Advocate Plan Administrative Committee Member
Defendants) ............................................................................. 43

COUNT IX ................................................................................................................ 44

    (Claim for Breach of Fiduciary Duty Against All Defendants) .......................... 44

    1.    Breach of the Duty of Prudence and Loyalty .......................................... 44

    2.    Prohibited Transactions .......................................................................... 46

    3.    Failure to Monitor Fiduciaries ............................................................... 47

    4.    Co-Fiduciary Liability ........................................................................... 49

COUNT X ................................................................................................................. 51

    (Claim for Declaratory Relief That the Church Plan Exemption
    Violates the Establishment Clause of the First Amendment
    of the Constitution, and Is Therefore Void and Ineffective) .................. 51

VIII.    PRAYER FOR RELIEF ................................................................................. 54

Plaintiffs Maria Stapleton, Judith Lukas, Sharon Roberts and Antoine Fox, individually and on behalf of all those similarly situated, as well as on behalf of the Advocate Plan, as defined herein, by and through their attorneys, hereby allege as follows:

## I.    INTRODUCTION

1.    Defendant Advocate Health Care Network and Subsidiaries, by and through its subsidiaries and/or affiliates ("Advocate" or "Defendant"), operates a hospital conglomerate in Northern and Central Illinois and provides healthcare services in the communities it serves. This case concerns whether Advocate properly maintains its pension plan under the Employee Retirement Income Security Act ("ERISA"). As demonstrated herein, Advocate fails to do so, to the detriment of it's over 33,000 employees who deserve better.

2.    As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

3.    This class action is brought on behalf of all participants and beneficiaries of the Advocate Health Care Network Pension Plan, a defined benefit pension plan that is established, maintained, administered, and sponsored by Advocate, or by Advocate's committees (referred to as the "Advocate Plan" or simply the "Plan").

4.      Advocate is violating numerous provisions of ERISA—including, on information and belief, underfunding the Advocate Plan—while erroneously claiming that the Plan is exempt from ERISA's protections because it is a "Church Plan."  But the Advocate Plan does not meet the definition of a Church Plan under ERISA because Advocate plainly is not a church or a convention or association of churches and because the Advocate Plan was not established by a church or a convention or association of churches.  That should be the end of the inquiry under ERISA, resulting in a clear finding that the Advocate Plan is not a Church Plan.

5.      Advocate may claim that it is permitted to establish its own Church Plan under ERISA, even though it is not a church, because it is an organization "controlled by" or "associated with" a church, within the meaning of ERISA.  Even if ERISA permitted such non-church entities to establish Church Plans, which it does not, Advocate is not controlled by a church, as the evidence will show.  Moreover, Advocate is not associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

6.      Advocate is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which Advocate competes in its commercial healthcare activities. Advocate is not owned or operated by a church and does not receive funding from a church.  No denominational requirement exists for Advocate employees.  Indeed, Advocate tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Advocate employees.  In choosing to recruit and hire from the population at large, Advocate must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests. Moreover, Advocate owns and/or operates

numerous healthcare facilities, including many that claim to be secular and have no relationship with any church.

7.      If Advocate, a non-church organization, could itself establish a Church Plan, which Plaintiffs dispute, the Court would be required to evaluate many levels of evidence to determine whether Advocate shares common "religious bonds and convictions" with a church.

8.      Moreover, if the Court weighed all this evidence and determined that Advocate did share such common religious bonds and convictions with a church, the Church Plan exemption would then be, as applied to Advocate, an unconstitutional accommodation under the Establishment Clause of the First Amendment.  Advocate claims, in effect, that the participants in its defined benefit pension plan must be exempted from ERISA protections, and Advocate must be relieved of its ERISA financial obligations, because Advocate claims certain religious beliefs.  The Establishment Clause, however, does not allow such an economic preference for Advocate and burden-shifting to Advocate employees.  Extension of the Church Plan exemption to Advocate would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms Advocate workers; (C) puts Advocate competitors at an economic disadvantage; (D) relieves Advocate of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

9.      Advocate's claim of Church Plan status for its defined benefit pension plan fails under both ERISA and the First Amendment.  Plaintiffs seek an Order requiring Advocate to comply with ERISA and afford the Class all the protections of ERISA with respect to Advocate's defined benefit pension plan, as well as an Order finding that the Church Plan

exemption, as claimed by Advocate, is unconstitutional because it violates the Establishment Clause of the First Amendment.

## II.    JURISDICTION AND VENUE

10.    **Subject Matter Jurisdiction.**  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

11.    **Personal Jurisdiction.**  This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them.  The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in Illinois as a result of Defendant Advocate being headquartered in, transacting business in, and/or having significant contacts with this District.

12.    **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Defendant Advocate may be found in this District.

13.    Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Advocate systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.   PARTIES

### A.   Plaintiffs

14.   **Plaintiff Maria Stapleton**.  Plaintiff Stapleton was an employee of Advocate from April 2008 until February 2013.  Because the Advocate Plan is a cash balance plan, participants in the plan must become fully vested after 3 years of service.  See ERISA § 203(f)(2), 29 U.S.C. § 1053(f)(2).  Accordingly, Plaintiff Stapleton is a vested participant in a pension plan maintained by Advocate and she is therefore eligible for pension benefits under the Plan to be paid at normal retirement age.  Additionally and alternatively, Plaintiff Stapleton has a colorable claim to benefits under a pension plan maintained by Advocate and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Advocate Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

15.   **Plaintiff Judith Lukas.**  Plaintiff Lukas has been an employee of Advocate since June 2008.  Additionally and alternatively, Plaintiff Lukas has a colorable claim to benefits under a pension plan maintained by Advocate and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Advocate Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

16.   **Plaintiff Sharon Roberts**.  Plaintiff Roberts was an employee of Advocate from September 2009 until March 2013.  Because the Advocate Plan is a cash balance plan, participants in the plan must become fully vested after 3 years of service.  See ERISA § 203(f)(2). 29 U.S.C. § 1053(f)(2).  Accordingly, Plaintiff Roberts is a vested participant in a

pension plan maintained by Advocate and she is therefore eligible for pension benefits under the Plan to be paid at normal retirement age. Additionally and alternatively, Plaintiff Roberts has a colorable claim to benefits under a pension plan maintained by Advocate and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Advocate Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

17.     **Plaintiff Antoine Fox**.  Plaintiff Fox was an employee of Advocate from October 2008 until October 2012.  Because the Advocate Plan is a cash balance plan, participants in the plan must become fully vested after 3 years of service.  See ERISA § 203(f)(2), 29 U.S.C. § 1053(f)(2). Accordingly, Plaintiff Fox is a vested participant in a pension plan maintained by Advocate and she is therefore eligible for pension benefits under the Plan to be paid at normal retirement age.  Additionally and alternatively, Plaintiff Fox has a colorable claim to benefits under a pension plan maintained by Advocate and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Advocate Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**B.     Defendants**

18.     As discussed below, all the Defendants are ERISA fiduciaries.

19.     **Defendant Advocate Health Care Network and Subsidiaries** ("Advocate"). Defendant Advocate is a 501(c)(3) non-profit corporation organized under, and governed by, Illinois law.  Advocate is headquartered in Downers Grove, Illinois.  Advocate is the largest health care provider in Illinois, with 12 hospitals and more than 250 sites offering inpatient and

outpatient services, home health services, hospice, counseling, physician services, and health care education programs in Northern and Central Illinois. Advocate has annual operating revenues of approximately $4.6 billion and assets of approximately $7.8 billion. Advocate employs more than 33,300 people.

20. **Defendant Advocate Health Care Network** ("AHCN"). Defendant AHCN is a 501(c)(3) non-profit corporation organized under, and governed by, Illinois law. AHCN is the parent of Advocate and currently has no material operations or activities of its own, apart from its ability to control the organizations comprising Advocate.

21. **Defendant Kevin R. Brady**. Defendant Brady has worked in leadership roles at Advocate for over 20 years and currently serves as Advocate's Senior Vice President, Chief Human Resources Officer.

22. **Defendant Advocate Plan Administrative Committee and Defendants John and Jane Does, 1-20, Members of Defendant Advocate Plan Administrative Committee** (the "Benefit Plan Administrative Committee for Church Plans"). Defendant Advocate Plan Administrative Committee is the Plan Administrator of the Advocate Plan. Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the Advocate Plan Administrative Committee. These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

23. **Defendant Advocate Benefits Committee and Defendants John and Jane Does, 21-40, Members of Defendant Advocate Benefits Committee** (the "Compensation and Benefits Committee of the Board of Directors of Advocate Health Care Network"). Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to be members of

Defendant Advocate Benefits Committee. These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

24. **Defendants John and Jane Does 41-60**. Defendants John and Jane Does 41-60 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Advocate Plan and are fiduciaries within the meaning of ERISA. These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

25. Defendants Kevin R. Brady, members of the Advocate Plan Administrative Committee, members of the Advocate Benefits Committee and John and Jane Does 41-60 are collectively referred to herein as the "Individual Defendants."

## IV. THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A. The Adoption of ERISA

26. Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965. *See generally* John Langbein, *et al*., PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

27. As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the Plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to

participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

28.     ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

**B.      The Scope of the Church Plan Exemption in 1974**

29.     As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and Church Plans. Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants. ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

30.     ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

---

[1]     ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively. Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

31.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982.  ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)).  Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan.  *Id*.

## C.      The Changes to the Church Plan Exemption in 1980

32.     Church groups had two major concerns about the definition of "Church Plans" in ERISA as adopted in 1974.  The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church.  The second concern that arose in the church community after 1974 was more technical.  Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches.  This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans.  In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

33.     These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan."  Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364.  The amended definition is current law.

34.     As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of

ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)). As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id.* The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

35. As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits*, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan "established" by a church or by a convention or association of churches could retain its "Church

Plan" status even if the plan was "maintained by" a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits" and (2) the organization is "controlled by or associated with" the church or convention or association of churches. *Id*.

36. This church "pension board" clarification has no bearing on plans that were not "established" by a church or by a convention or association of churches. Thus, a plan "established" by an organization "controlled by or associated with" a church would not be a "Church Plan" because it was not "established" by a church or by a convention or association of churches.

37. Further, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board. Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was other than the administration or funding of the plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension board: No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan. *Compare with* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

38. The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. And there is no tension between the legislative history of the 1980 amendment and the amendment itself: the Congress

enacted exactly what it wanted to enact.  Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan.  Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan.  With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

39.  Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework.  The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a Church.  This, of course, is not what the statute says, nor what Congress intended.  In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in Department of Labor determinations.  Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event.  Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis.

## V.    ADVOCATE

### A.    Advocate's Operations

40.    Advocate was formed in 1995. It is a 501(c)(3) non-profit corporation organized under, and governed by, Illinois law.  Advocate is headquartered in Downers Grove, Illinois. Advocate is the largest health system in Illinois and owns and operates 12 acute-care hospitals, primary and specialty physician services, outpatient centers, physician office buildings, home health, and hospice care throughout the metropoligan Chicago area and central Illionis.

41.    As of its 2012 fiscal year end, Advocate had approximately $7.8 billion in assets and annual operating revenues of approximately $4.6 billion.

42.    Advocate employs more than 33,300 people.

43.    In addition to its statewide hospital network, Advocate has branched out to include numerous subsidiaries and/or related entities, including for-profit corporations such as Evangelical Services Corporation, which provides ancillary and support services to Advocate, High Technology, Inc., which owns and operates diagnostic centers, and several large physician groups, including Advocate Health Centers, Inc., BroMenn Medical Group, and Dreyer Medical Group, Ltd.

44.    Advocate has interests in, or signature or other authority over, financial accounts in such foreign tax-havens as the Cayman Islands.  It directly or indirectly owns at least two captive insurance companies in the Cayman Islands: Advocate Insurance SPC and Sherman Health Insurance Company.

45.    Like other large non-profit hospital systems, Advocate relies upon revenue bonds to raise money, and it has significant sums invested in, among other things, fixed-income securities, equity securities, and hedge funds.

46.     The principle purpose or function of Advocate is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches.

47.     The management of Advocate is comprised primarily of lay people, and Executive Officers of Advocate receive compensation in line with executive officers of other hospital systems.  For example, in 2011, the Advocate President and Chief Executive Officer received reportable compensation of $3,316,797.

48.     Advocate is not a church or a convention or association of churches. On information and belief, Advocate claims some affiliation with the United Church of Christ ("UCC") and the Evangelical Lutheran Church in America ("ELCA").

49.     However, Advocate is not owned by the UCC, the ELCA, or any other church.

50.     Advocate does not receive funding from the UCC, the ELCA, or any other church.

51.     Advocate does not claim that the UCC, the ELCA, or any other church has any liability for Advocate's debts or obligations.

52.     Neither the UCC, the ELCA, nor any other church has any role in the governance of Advocate.

53.     Neither the UCC, the ELCA, nor any other church has any role in the maintenance and/or administration of the Advocate Plan.

54.     Advocate specifically chooses not to impose any denominational requirement on its employees.

55.     Advocate has no denominational requirement for its patients and/or clients.

56.     Advocate purports to disclose, and not keep confidential, its own highly complex financial records.  For example, Advocate is required and, in some cases, has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid.  In addition, Advocate makes public its consolidated financial statements, which describe Advocate's representations as to its own highly complex operations and financial affairs.  Finally, Advocate's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

**B.     The Advocate Plan**

57.     Advocate maintains the Advocate Plan and has the power to continue, amend, or terminate the plan.

58.     The Advocate Plan is a non-contributory defined benefit pension plan covering substantially all of Advocate's employees.

59.     The Advocate Plan is a cash balance plan, whereby the accrued benefits are reflected as a hypothetical account balance.

60.     Upon information and belief, the Advocate Plan is currently underfunded.

**1.     The Advocate Plan Meets the Definition of an ERISA Defined Benefit Plan**

61.     The Advocate Plan is a plan, fund, or program that was established or maintained by Advocate and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.  As such, the Advocate Plan meets the definition of an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

62.     The Advocate Plan does not provide for an individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's

account.  As such, the Advocate Plan is a defined benefit plan within the meaning of ERISA §

3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or "defined contribution plan"

within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

63.    The Advocate Plan is a cash balance plan because it computes accrued benefits by

reference to hypothetical accounts balance or equivalent amounts and is therefore required to

comply with the special rules for cash balance plans, including but not limited to ERISA §

203(f)(2), 29 U.S.C. § 1053(f)(2),which requires that any employee who has completed at least 3

years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit

derived from employer contributions.   In other words, the maximum vesting period allowable

for a cash balance plan is 3 years.

64.    Currently the Plan is being operated in violation of ERISA §§ 203(a)(2) and

203(f)(2)  because it requires participants in the plan to complete 5 years of service to be vested.

65.    Indeed, communications provided to participants by the Plan Administrator state

"You become fully vested in the value of your Pension Plan account once you complete five

years of participation in the plan in which you work at least 1,000 hours per year."

  2.    **The Defendants Meet the Definition of ERISA Fiduciaries**

    a.    **Nature of Fiduciary Status**

66.    **Named Fiduciaries**.  Every ERISA plan must have one or more "named

fiduciaries."  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  The person named as the

"administrator" in the plan instrument is automatically a named fiduciary and, in the absence of

such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. §

1002(16)(A).

67. **De Facto Fiduciaries**. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

68. Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan's documents and/or through their conduct.

69. As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

70. Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

71.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

### b.     Defendants Are Each ERISA Fiduciaries

72.     **Defendant Advocate**.  Advocate is the employer responsible for maintaining the Advocate Plan and is, therefore, the plan sponsor of the Advocate Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  The Advocate Plan Summary Plan Description ("SPD") also states that Advocate is the Plan Sponsor.  Upon information and belief, Defendant Advocate's responsibilities include fiduciary oversight of the Advocate Plan.  Upon information and belief, Defendant Advocate had the responsibility to appoint, and hence to monitor and remove, the members of the Advocate Plan Administration Committee.

73.     Defendant Advocate is a fiduciary with respect to the Advocate Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Advocate Plan, exercises authority and control respecting management or disposition of the Advocate Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Advocate Plan.

74.     **Defendant AHCN**.  Upon information and belief, Defendant AHCN's responsibilities include fiduciary oversight of the Advocate Plan, including managing and exerting discretionary authority or control over the assets of the Advocate Plan.  Defendant AHCN is a fiduciary with respect to the Advocate Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because, as the parent corporation of Advocate, it exercises

discretionary authority or discretionary control respecting management of the Advocate Plan, exercises authority and control respecting management or disposition of the Advocate Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Advocate Plan.

75.     **Defendant Brady**.  Upon information and belief, Defendant Brady's responsibilities include fiduciary oversight of the Advocate Plan.  According to the Advocate Plan SPD, participant inquiries regarding the administration of the Advocate Plan must be sent to the Plan Administrator, in care of the Senior Vice President, Human Resources.  As the Senior Vice President, Chief Human Resources Officer at Advocate, Defendant Brady acts on behalf of and/or in conjunction with the Plan Administrator with respect to questions of Plan administration.  Defendant Brady is a fiduciary with respect to the Advocate Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority or discretionary control respecting management of the Advocate Plan, exercises authority and control respecting management or disposition of the Advocate Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Advocate Plan.

76.     **Advocate Plan Administrative Committee Defendants**.  The terms of the instrument, or instruments, under which the Advocate Plan is operated specifically designate Defendant Advocate Benefit Plan Administrative Committee for Church Plans as a Plan Administrator sufficient to meet the requirements of ERISA § 402, 29 U.S.C. § 1102.

77.     Defendant Advocate Plan Administrative Committee and Defendants John and Jane Does 1-20, as members of the Advocate Plan Administrative Committee, are also fiduciaries with respect to the Advocate Plan within the meaning of ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Advocate Plan, exercise authority and control respecting management or disposition of the Advocate Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Advocate Plan.

78.     **Advocate Benefits Committee Defendants**.  Defendant Advocate Benefits Committee and the members of Defendant Advocate Benefits Committee are, on information and belief, authorized to act with respect to compensation and benefits matters.  Upon information and belief, the responsibilities of Defendant Advocate Benefits Committee and the members of Defendant Advocate Benefits Committee include fiduciary oversight of the Advocate Plan.

79.     Defendant Advocate Benefits Committee and Defendants John and Jane Does 21-40, as members of Defendant Advocate Benefits Committee, are fiduciaries with respect to the Advocate Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Advocate Plan, exercise authority and control respecting management or disposition of the Advocate Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Advocate Plan.

80.     Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants once she has had the opportunity to conduct discovery on these issues.

81.     Although Advocate maintains that the Advocate Plan is exempt from ERISA coverage as a Church Plan, it claims ERISA status for its 401(k) plan and welfare benefit plans.

82.     Compliance with ERISA creates no undue, genuine burden on any religious practice of Advocate, as evidence by Advocate's claimed compliance with ERISA for its 401(k) plan and welfare benefit plans.

### 3.     The Advocate Plan Is Not a Church Plan

83.     Advocate claims that the Advocate Plan is a Church Plan under ERISA § 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), and is therefore exempt from ERISA's coverage under ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2).

#### a.     Only Two Types of Plans May Qualify as Church Plans and the Advocate Plan is Neither

84.     Under § 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as "Church Plans."

85.     Although other portions of ERISA § 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA § 3(33)(C) do not add any other type of *plan* that can be a Church Plan.  29 U.S.C. § 1002(33)(C).  The only two types of plans that can qualify as Church

Plans are those described in ERISA § 3(33)(A) and in § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) and

(C)(i). The Advocate Plan does not qualify as a Church Plan under either ERISA § 3(33)(A) or §

3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) or (C)(i).

86. First, under ERISA § 3(33)(A), "[t]he term "church plan" means a plan

established and maintained for its employees by a church or by a convention or association of

churches which is exempt from tax under section 501 of title 26." ERISA § 3(33)(A), 29 U.S.C.

§ 1002(33)(A). A straightforward reading of this section is that a church plan "means," and

therefore by definition, *must be* "a plan established . . . by a church or convention or association

of churches."

87. The Advocate Plan at issue here is not a Church Plan as defined in ERISA §

3(33)(A), 29 U.S.C. § 1002(33)(A), because the Advocate Plan was established, maintained,

administered or sponsored by Advocate for its own, or its affiliates' own, employees. Because

neither Advocate nor its affiliates are a church or a convention or association of churches, nor do

they claim to be, the Advocate Plan was not "established and maintained by" a church or by a

convention or association of churches and were not maintained for employees of any church or

convention or association of churches. That is the end of the inquiry under ERISA § 3(33)(A),

29 U.S.C. § 1002(33)(A).

88. Second, under ERISA § 3(33)(C)(i), a Church Plan also includes a plan

"established" by a church or by a convention or association of churches that is "maintained by an

organization, whether a civil law corporation or otherwise, the principal purpose or function of

which is the administration or funding of a plan or program for the provision of retirement

benefits or welfare benefits, or both, for the employees of a church or a convention or association

of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

89. The Advocate Plan is not a Church Plan as defined in ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Advocate Plan was not "established" by a church or by a convention or association of churches. Moreover, the Advocate Plan does not qualify as a "Church Plan" under section 3(33)(C)(i) because it is not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. This ends any argument that the Advocate Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

90. To the extent that Advocate claims the the Advocate Plan qualifies as a "Church Plan" under section 3(33)(C)(i) because it is "maintained" by an entity within Advocate, other that Advocate, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the Advocate Plan, which includes the power to continue and/or terminate the Plan, is Advocate. The claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church. This ends any argument that the Advocate Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because it is maintained by an entity other than Advocate.

91. However, even if the Advocate Plan had been "established" by a church and even if the principal purpose or function of Advocate was the administration or funding of the Advocate Plan (instead of running a hospital conglomerate), the Advocate Plan still would not

qualify as a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the

principal purpose of the Plan is not to provide retirement or welfare benefits to *employees of a*

*church or convention or association of churches*.  For example, the approximately

33,000 participants in the Advocate Plan work for Advocate, a non-profit hospital conglomerate.

Advocate is not a church or convention or association of churches and its employees are not

employees of a church or convention or association of churches within the meaning of ERISA.

92.     Under ERISA § 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee

of a tax exempt organization that is controlled by or associated with a church or a convention or

association of churches also may be considered an employee of a church.  This part of the

definition merely explains which employees a church plan may cover *once a valid church plan is*

*established*.  The Advocate Plan also fails this part of the definition, because Advocate is not

controlled by or associated with a church or convention or association of churches within the

meaning of ERISA.

93.     Advocate is not controlled by a church or convention or association of churches.

94.     Advocate is not owned or operated by a church and does not receive funding from

a church.[2]

95.     In addition, Advocate is not "associated with" a church or convention or

association of churches within the meaning of ERISA.  Under ERISA § 3(33)(C)(iv), 29 U.S.C.

§ 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of

churches if it shares common religious bonds and convictions with that church or convention or

_____

[2]     Notably, if Advocate were "controlled by" the UCC or the ELCA, then those
churches would be exposed to significant potential liability stemming from
medical malpractice and other legal claims related to the provision of medical
care by Advocate.

association of churches." Advocate does not share common religious bonds and convictions with a church or association of churches.

96.     For example, Advocate tells prospective employees that religious affiliation is not a factor in the recruiting and hiring of Advocate employees. In choosing to recruit and hire from the population at large, Advocate must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

97.     In addition, Advocate has a practice of partnering with hospitals that claim no religious affiliation. In choosing to compete in the commercial arena of healthcare services and to embark upon a business plan that targets healthcare facilities with no claimed ties to any particular religion, or to religion generally, Advocate must be willing to accept neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

98.     Advocate owns at least one offshore insurance company and invests in high risk venture capital projects as part of its business plan.

99.     Advocate provides non-denominational chapels and encourages its clients to seek the faith of their own choosing, including Judaism and Catholicism. So while Advocate may purport to share common religious bonds and convictions with the UCC and the ELCA, it in fact only selectively chooses to share a bare few such bonds and convictions, and ignores or abandons these convictions when it is in its economic interest to do so.

100.     The Advocate Plan further fails to satisfy the requirements of ERISA § 3(33)(C)(i) because this section requires the organization that maintains the plans to be "controlled by or associated with" a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i). Thus, even if (1) a church had "established" the Advocate Plan (which it did not), (2) the principal purpose or function of Advocate was the

administration or funding of the Advocate Plan (instead of running a hospital conglomerate), and (3) Advocate's employees were employees of a church or convention or association of churches (which they are not), the Advocate Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i) because—for the reasons outlined above—Advocate is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i).

101.    Finally, even if Advocate were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA § 3(33)(C)(ii)(2), and even if the Advocate Plan was "maintained by" either a church or "pension board" satisfying the requirements of ERISA § 3(33)(C)(i), the Advocate Plan still would not be a "Church Plan" because all "Church Plans" must be "established" by a church or by a convention or association of churches.  29 U.S.C. §§ 1002(33)(A), (C)(i).  Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization.  Accordingly, because no church established the Advocate Plan, the Plan cannot be a "Church Plan" within the meaning of ERISA.

### b.      Even *if* the Advocate Plan Could Otherwise Qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it is Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)

102.    Under ERISA § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church

or convention or association of churches. In this case, there are approximately 33,000 participants in the Advocate Plan, and very nearly all of them are non-clergy healthcare workers.

103. If the approximately 33,000 participants in the Advocate Plan do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Advocate Plan could otherwise qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

104. As set forth above, Advocate is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches.

      **c.      Even if the Advocate Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Advocate, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

105. The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

106. The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (e.g. exempts them from neutral regulations) at the expense of nonadherents and/or while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to Advocate, a non-church entity, privileges Advocate for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections. Similarly, Advocate, a non-church entity, has a privileged

CLASS ACTION COMPLAINT
PAGE - 28

economic advantage over its competitors in the commercial arena it has chosen, based solely on Advocate's claimed religious beliefs. This too is prohibited by the Establishment Clause. Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g.*, *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n. 8 (1989) (plurality opinion).

107. As set forth in more detail below in Count IX, the extension of the Church Plan accommodation to Advocate, which is not a church, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms Advocate workers, puts Advocate competitors at an economic disadvantage, relieves Advocate of no genuine religious burden created by ERISA, and creates more government entanglement with alleged religious beliefs than compliance with ERISA creates. Accordingly, the Church Plan exemption, as claimed by Advocate, is void and ineffective.

## VI. CLASS ALLEGATIONS

108. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated: All participants or beneficiaries of the Advocate Health Care Network Pension Plan.

109. Excluded from the Class are any high-level executives at Advocate or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Advocate Plan, including the Individual Defendants.

## A.     Numerosity

110.     The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Advocate.  Advocate currently employs approximately 33,000 individuals.  Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

## B.     Commonality

111.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA.

112.     The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and enforce the funding obligations of the Plan in accordance with ERISA; and (3) an order requiring Advocate to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

## C.     Typicality

113.     Plaintiffs' claims are typical of the claims of the other members of the Class because her claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA.  Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

114.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Advocate Plan is not a Church Plan; and (ii) a declaration that the Advocate Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA.  In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

115.     Advocate does not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**D.     Adequacy**

116.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

117.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

118.     Defendant Advocate and the Individual Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

119.     Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.     Rule 23(b)(1) Requirements**

120.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

121.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.    Rule 23(b)(2) Requirements**

122.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.    Rule 23(b)(3) Requirements**

123.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by Advocate, violates the Establishment Clause of the First Amendment.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

CLASS ACTION COMPLAINT
PAGE - 32

B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.     There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.     This litigation is properly concentrated in this forum, which is where Defendant Advocate is headquartered; and

E.     There are no difficulties managing this case as a class action.

## VII.   CAUSES OF ACTION

### COUNT I
### (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Advocate, AHCN, Defendant Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants)

124.     Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

125.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title."  Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Advocate Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of Title I and Title IV of ERISA.

126.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek orders directing the Advocate Plan's sponsor and administrator to bring the Advocate Plan into compliance with ERISA.

127. ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plan as a non-ERISA plan was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiffs also seek plan-wide equitable and remedial relief under ERISA § 502(a)(2).

128. As the Advocate Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Advocate Plan should be declared to be an ERISA-covered pension plan, and the Advocate Plan's sponsor and administrator should be ordered to bring the Advocate Plan into compliance with ERISA, including by remedying the violations set forth below.

**COUNT II**
**(Claim for Violation of ERISA § 203 and for Equitable Relief Pursuant to ERISA § 502(a)(3) Against Defendant Advocate, and Pursuant to ERISA § 502(a)(2) Against Defendants Advocate, AHCN, Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants)**

129. Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

130.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

131.    Currently the Advocate Plan requires participants to complete five years of vesting service to become fully vested in their accrued benefits in the Plan, which violates ERISA §§ 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), because the Advocate Plan, which is a cash balance plan, may not require a participant to complete more than 3 years of service to become fully vested in her benefits under the Plan.

132.    Pursuant to 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order that they, along with all participants who have completed three years of service, are fully vested in their accrued benefits under the Advocate Plan.

133.    Pursuant to 502(a)(3), 29 U.S.C. § 1132(a)(2), Plaintiffs seek an order requiring the Plan Administrator to furnish them with a benefit statement that is compliant with ERISA and that states their account balance based on a three year vesting period.

134.    Pursuant to 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an orders directing the Advocate Plan's sponsor and administrator to amend the Advocate Plan, which is a cash balance plan that computes accrued benefits by reference to hypothetical accounts balance or equivalent amounts, to comply with all the special rules for cash balance plans.

135.    In particular, Plaintiffs seek an order directing the Advocate Plan's sponsor and administrator to amend the vesting provision of the Advocate Plan to comply with ERISA § 203(f)(2), 29 U.S.C. §§ 1053 (f)(2), which requires that any employee who has completed at

least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

136.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Plan Sponsor to contribute additional funding to the Advocate Plan, as required by ERISA § 302, 29 U.S.C. §§ 1052, to cover the additional Plan liabilities resulting from the accrued benefits owed to all participants who have completed 3 years of service but less than 5 years of service and therefore to date have not been considered to be fully vested in their accrued benefits under the Advocate Plan.

137.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plan as a non-ERISA plan was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiffs also seek plan-wide equitable and remedial relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for violations of ERISA §203, 29 U.S.C. § 1053, and other provisions of ERISA against fiduciaries Advocate, AHCN, Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants for failure to comply with the special requirements for cash balance plans as described above.

## COUNT III
**(Claim for Violation of Reporting and Disclosure Provisions Against Defendant Advocate Plan Administrative Committee and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants)**

138.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

1.    **Summary Plan Descriptions**

139.    At no time has the Advocate Plan Administrative Committee or its members provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Advocate Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

140.    Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Plan at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

2.    **Annual Reports**

141.    At no time has the Advocate Plan Administrative Committee or its members filed an annual report with respect to the Advocate Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

142.    Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Advocate Plan at all relevant times, the Advocate Plan Administrative Committee Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Advocate Plan with the Secretary of Labor in compliance with

ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

       3.    **Summary Annual Reports**

      143.    At no time has the Advocate Plan Administrative Committee or its members furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Advocate Plan in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

      144.    Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Advocate Plan at all relevant times, the Advocate Plan Administrative Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Advocate Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

       4.    **Notification of Failure to Meet Minimum Funding**

      145.    At no time has the Advocate Plan Administrative Committee or its members furnished Plaintiffs or any member of the Class with a Notice with respect to the Advocate Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Advocate had failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the Advocate Plan.

      146.    Defendant Advocate has been the employer that established and/or maintained the Advocate Plan.

147.     At no time has Defendant Advocate funded the Advocate Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

148.     As the employer maintaining the Advocate Plan, Defendant Advocate has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the Advocate Plan.  Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Advocate Plan at all relevant times, it has violated ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1).

5.     **Funding Notices**

149.     At no time has the Advocate Plan Administrative Committee or its members furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Advocate Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

150.     Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Advocate Plan at all relevant times, it has violated ERISA § 101(f) by failing to provide each participant and beneficiary of the Advocate Plan with the Funding Notice required by ERISA § 101(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(f).  29 U.S.C. § 1021(f).

6.     **Pension Benefit Statements**

151.    At no time has the Advocate Plan Administrative Committee or its members furnished Plaintiffs or any member of the Class with a Pension Benefit Statement with respect to the Advocate Plan pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

152.    Because the Advocate Plan Administrative Committee has been the Plan Administrator of the Advocate Plan at all relevant times, it has violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1). 29 U.S.C. § 1025(a)(1).

## COUNT IV
### (Claim for Failure to Provide Minimum Funding Against Defendant Advocate)

153.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

154.    ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

155.    Advocate was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

156.    Since at least 1996, Advocate has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

157.    By failing to make the required contributions to the Advocate Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant Advocate has violated ERISA § 302.  29 U.S.C. § 1082.

## COUNT V
### (Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402 Against Defendant Advocate)

158.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

159.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

160.    Although the benefits provided by the Advocate Plan were described to the employees and retirees of Advocate (and/or its affiliates and subsidiaries) in various written communications, the Advocate Plan has never been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

161.    Defendant Advocate violated section 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Advocate Plan's operations and administration.  29 U.S.C. § 1102.

**COUNT VI**
**(Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant Advocate)**

162.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

163.     ERISA § 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in § 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

164.     Although the Advocate Plan's assets have been held in trust, the trust does not meet the requirements of ERISA § 403, 29 U.S.C. § 1103.

165.     Defendant Advocate violated section 403 by failing to put the Advocate Plan's assets in trust in compliance with ERISA § 403.  29 U.S.C. § 1103.

**COUNT VII**
**(Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant Advocate)**

166.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

167.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

168.     Plaintiffs and members of the class have not been provided ERISA-compliant benefit statements.

169.     Pursuant to ERISA §§ 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plan is made compliant with ERISA, Plaintiffs seek to clarify their rights under the terms of

the Plan and to require Defendant Advocate to provide Plaintiffs and the Class ERISA-compliant

benefit statements.

## COUNT VIII
**(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant Advocate, Defendant Advocate Plan Administrative Committee, and John and Jane Does 1-20, the Advocate Plan Administrative Committee Member Defendants)**

170. Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

171. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

172. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA § 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

173. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

174. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

175.    As Defendant Advocate, as the employer, has failed to give the notices required by ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart 4, Defendant Advocate is liable to Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

176.    As the Advocate Plan Administrative Committee, as Plan Administrator of the Plan, has failed to give the notices required by ERISA § 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statement required by ERISA § 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts 5 through 6, the Advocate Plan Administrative Committee and the Advocate Plan Administrative Committee Member Defendants are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT IX
### (Claim for Breach of Fiduciary Duty Against All Defendants)

177.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

178.    Plaintiffs bring this Count VII for breach of fiduciary duty pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

1.    **Breach of the Duty of Prudence and Loyalty**

179.    This sub-Count alleges fiduciary breach against all Defendants.

180.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

      (i)     providing benefits to participants and beneficiaries; and

      (ii)    defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

181.    As fiduciaries with respect to the Advocate Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Having the authority to enforce the provisions of ERISA at those respective times, ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Advocate Plan during the times that each was a fiduciary of the Advocate Plan.

182.    Defendants have never enforced any of the provisions of ERISA set forth in Counts I-V with respect to the Advocate Plan.

183.    By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiffs and the Class.

184.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Advocate Plan equal to the foregone funding and earnings thereon, and

profited Defendant Advocate by providing it the use of the money owed to the Advocate Plan for its general business purposes.

2.    **Prohibited Transactions**

185.    This sub-Count alleges violations on behalf of all Defendants.

186.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

187.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

188.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

189.    As fiduciaries with respect to the Plan and, with respect to Advocate, as an employer of employees covered by the Plan, and, with respect to Defendants Brady, an Officer of Advocate, the Defendants at all relevant times were parties in interest with respect to the Advocate Plan pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

190.    By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Advocate Plan to Advocate in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

191.    By failing to enforce the funding obligations created by ERISA and owed to the Advocate Plan, Defendants used Advocate Plan assets for Advocate's own benefit, when Defendants knew or should have know that their failure to enforce the funding obligations constituted such a use of Advocate Plan assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

192.    By failing to enforce the funding obligations created by ERISA and owed to the Advocate Plan, Defendants used Advocate Plan assets in Advocate's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

193.    The failure of Defendants to enforce the funding obligations owed to the Advocate Plan has resulted in a loss to the Advocate Plan equal to the foregone funding and earnings thereon.

194.    The failure of Defendants to enforce the funding obligations owed to the Advocate Plan has profited Defendant Advocate by providing it the use of money owed to the Advocate Plan for its general business purposes.

3.    **Failure to Monitor Fiduciaries**

195.    This sub-Count alleges fiduciary breach against Defendant Advocate.

196.    As alleged above, during the Class Period, Defendant Advocate was a named fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

197.    The scope of the fiduciary responsibilities of Advocate included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

198.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

199.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

200.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

201.    Defendant Advocate breached its fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plan as an ERISA plan; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plan as an ERISA Plan; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan; and (d) failing to remove appointees whose

performance was inadequate in that they continued to run the Plan as a non-ERISA Plan, and who breached their fiduciary duties under ERISA.

202.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Advocate Plan equal to the foregone funding and earnings thereon, and profited Defendant Advocate by providing it the use of money owed to the Advocate Plan for its general business purposes.

### 4.    **Co-Fiduciary Liability**

203.    This sub-Count alleges co-fiduciary liability against all Defendants.

204.    As alleged above, all Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

205.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

206.    **Knowledge of a Breach and Failure to Remedy**.  ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

207.    Because Defendants knew that the Plan was not being run as an ERISA Plan, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA.  Yet, they failed to undertake any effort to remedy these breaches.

208.    **Knowing Participation in a Breach**.  ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  Advocate knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plan not being run as an ERISA Plan.

209.    **Enabling a Breach**.  ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

210.    The failure of Defendant Advocate to monitor the Advocate Plan Administrative Committee enabled that committee to breach its duties.

211.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan is currently underfunded, meaning that the Plan does not have sufficient assets to pay all accrued benefits it has promised to its participants and beneficiaries and is legally obligated to pay under ERISA.

212.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Advocate Plan equal to the foregone funding and earnings thereon, and profited Defendant Advocate by providing it the use of money owed to the Advocate Plan for its general business purposes.

**COUNT X**
**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

213.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

214.     The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

215.     The ERISA Church Plan exemption, as claimed by Advocate, is an attempt to extend the accommodation beyond churches and associations of churches, to Advocate—a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace.  Extension of the Church Plan exemption to Advocate violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms Advocate workers, (C) puts Advocate competitors at an economic disadvantage, (D) relieves Advocate of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

A.     <u>Not Necessary to Further Stated Purpose</u>.  Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities."[3]  This purpose has no application to Advocate, which is neither run by nor intimately connected to any church financially.  And, unlike a church, Advocate has *no confidential books and records* to shield from government scrutiny.  Advocate already purports to disclose all

---

[3]     S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

        B.     <u>Harms Workers</u>.  Employers, including Advocate, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market.  Advocate tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Advocate employees.  Thus, as a practical matter, and by Advocate's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith.  In choosing to recruit and hire from the public at large, Advocate must be willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests.  To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests.  The Church Plan exemption, as claimed by Advocate, places its tens of thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plan is uninsured and, upon information and belief, underfunded.  In addition, Advocate fails to provide the multitude of other ERISA protections designed to safeguard its employees' pensions.  The Church Plan exemption, as claimed by Advocate, provides no consideration of the harm that it causes to Advocate's employees.

        C.     <u>Puts Advocate's Competitors at an Economic Disadvantage</u>.  Advocate's commercial rivals face material disadvantages in their competition with Advocate because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA

protections. In claiming that the Advocate Plan is an exempt Church Plan, Advocate enjoys a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the Advocate Plan, to its competitive growth strategy. To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of harm to nonbeneficiaries. The Church Plan exemption, as applied by Advocate, provides no consideration of the disadvantage it creates for Advocate's competitors.

D. Relieves No Genuine Religious Burden Imposed by ERISA. An exemption exclusively for religion must alleviate a significant, *state-imposed* interference with religious exercise. The Church Plan exemption, as claimed by Advocate, responds to no genuine burden created by ERISA on any of Advocate's religious practices. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities. Moreover, Advocate maintains multiple separate ERISA-governed plans, which further evidences that ERISA creates no undue burden on any genuine religious practice of Advocate.

E. Creates Government Entanglement with Alleged Religious Beliefs. An Advocate exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This *creates* entanglement between government and putative religious beliefs. ERISA compliance, on the other hand, requires *zero* entanglement with religion for Advocate because ERISA is a neutral statute that regulates pension protections and Advocate has no relevant confidential

books, records or relationships. Thus, an extension of the Church Plan exemption to
Advocate produces state entanglement with alleged religious beliefs while compliance
with ERISA creates no meaningful state entanglement with alleged religious beliefs.

216.    Plaintiffs seek a declaration by the Court that the Church Plan exemption, as
claimed by Advocate, is an unconstitutional accommodation under the Establishment Clause of
the First Amendment, and is therefore void and ineffective.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all
claims and requests that the Court award the following relief:

A.      Declaring that the Advocate Plan is an employee pension benefit plan within the
meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the
meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition
of ERISA § 3(33), 29 U.S.C. § 1002(33).  Ordering Advocate to reform the Advocate Plan to
bring it into compliance with ERISA and to have the Advocate Plan comply with ERISA,
including as follows:

1.      Revising the Plan documents to reflect that the Plan is a defined benefit
plan regulated by ERISA.

2.      Requiring Advocate to fund the Advocate Plan in accordance with
ERISA's funding requirements, disclose required information to the Advocate Plan,
participants, and beneficiaries, and otherwise comply with all other reporting, vesting,
and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31,
1051-61, 1081-85.

3.      Reforming the Advocate Plan to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

4.      Requiring the adoption of an instrument governing the Advocate Plan that complies with ERISA § 402, 29 U.S.C. § 1102.

5.      Requiring Advocate to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant Participant Benefit Statements, and providing Notice of the Advocate Plan's funding status and deficiencies.

6.      Requiring clarification of rights to future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B).

7.      Requiring the establishment of a Trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

B.      Requiring Advocate, as a fiduciary of the Plan, to make the Advocate Plan whole for any losses and disgorge any Advocate profits accumulated as a result of fiduciary breaches.

C.      Appointing an Independent Fiduciary to hold the Advocate Plan's assets in trust, to manage and administer the Advocate Plan and its assets, and to enforce the terms of ERISA.

D.      Requiring Advocate to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to properly fund the Plan.

E.      Requiring Advocate to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice.

F.      Requiring Advocate to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

G.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Advocate Plan.

H.      Declaring, with respect to Count IX, that the Church Plan exemption, as claimed by Advocate, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

I.      Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

J.      Awarding to Plaintiffs taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

K.      Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

L.      Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED: March 17, 2014.

KELLER ROHRBACK L.L.P.

CLASS ACTION COMPLAINT
PAGE - 56

1860136.1

Lynn Lincoln Sarko
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
   eriley@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email:  rkilgard@kellerrohrback.com

COHEN MILSTEIN SELLERS & TOLL, PLLC
Karen L. Handorf
Michelle Yau
Mary Bortscheller
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email:  khandorf@cohenmilstein.com
   myau@cohenmilstein.com
   mbortscheller@cohenmilstein.com

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
Tel: (312) 233-1550
Fax: (312) 233-1560
Email:  jzouras@stephanzouras.com
   rstephan@stephanzouras.com

**Attorneys for Plaintiffs**