UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA STAPLETON *et al.*, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Advocate Plan,<br><br>Plaintiffs,<br><br>v.<br><br>ADVOCATE HEALTH CARE NETWORK AND SUBSIDIARIES, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14 C 01873<br><br>Judge Edmond E. Chang |

ORDER

     In advance of the status hearing, the Court sets forth the following guidance on moving the case forward even as the parties continue settlement discussions. The overarching rationale for this litigation plan is to avoid, in this three-year-old case, further piecemeal litigation, both in the district court and in potential appeals, so it would be sensible to allow targeted discovery in order to enable the Court to decide issues on alternative legal *and* factual grounds. That way, any appeal will present the complete set of issues on a complete record.

     **1. Whether the plan was "*maintained*" by a *principal-purpose* organization under § 1002(33)(C)(i).** Plaintiffs argue that the Plan is maintained by Advocate, which is not a principal-purpose organization. Advocate appears to argue that an internal Advocate committee maintains the Plan, and thus qualifies as a principal-purpose organization. In the defense's view, the Plan document describes the maintenance of the Plan, so no discovery is necessary. But how the maintenance operates in *fact*, rather than just by way of Plan-document description, is discoverable. This would include discovery on the committee's structure and operation (and this assumes that an internal committee may even qualify as an "organization" for this purpose). Having said that, the discovery requests must be limited specifically to the *maintenance* and *purpose* issues, rather than comprise all-encompassing requests for any document relating to the committee. And the time period should be limited so that a representative time period (or periods) pertaining

1

to the maintenance issue can further narrow the burden of this discovery. Indeed, with some targeted interrogatories and document requests, along with good-faith conferrals (and possibly under-oath declarations), it might be possible to avoid depositions altogether.

**2. Whether Advocate is "*associated with*" a church under § 1002(33)(C)(iv), that is whether Advocate shares "common religious bonds and convictions" with a church,** *id.* Here, the defense argues that this element has been satisfied, as a matter of law, because the United Church of Christ and the Evangelical Lutheran Church in America filed an amicus brief stating that Advocate is "affiliated" with them. But the case cited in support, *McCarthy v. Fuller*, 714 F.3d 971, 977-78 (7th Cir. 2015), is not directly on point. There, the plaintiff brought a defamation claim against someone who called her a "fake nun." *Id.* at 977. Not surprisingly, the Seventh Circuit held that, as to the truth or falsity of that statement, it was entirely up to the Catholic Church to say so one way or the other. *Id.* at 978.

Here, membership in a church is not the issue; rather, there is a statutory overlay on what it means to be "associated with" a church for purposes of the ERISA exemption. There must be constituent facts that satisfy the test for shared common religious bonds and convictions. And it is also a two-way street: Advocate must share the bonds and convictions. So this is not quite the same as a church's absolute authority to declare, ipse dixit, its membership.

To be sure, here too the discovery is likely to be quite limited, and must avoid intruding into the religious beliefs of any church or of Advocate. Plaintiffs propose the standard adopted by *Lown v. Contentinal Cas.*, 238 F.3d 543, 548 (4th Cir. 2001) (also adopted by *Chronister v. Baptist Health*, 442 F.3d 648, 652-53 (8th Cir. 2006)), and the three factors comprising the standard do seem to avoid over-intrusiveness. 238 F.3d at 548 ((a) does the church play any official role in governance; (b) does the organization receive assistance from the church; and (c) is there a denominational requirement for employees or patients/customers of the organization). It is not crystal clear that these factors correctly interpret the "associated with" element, because the test is whether there are shared common religious bonds and convictions. And the third factor does seem potentially at odds with the possibility that both the church and the organization might share a belief that its employees or patients (or both) need not be of any denomination. So the Court is not outright adopting *Lown* during this discovery phase. The point is that Plaintiffs may engage in limited discovery only, with Advocate preserving its argument that the issue has

been answered as a matter of law via the amicus brief statement. And, again, it seems unlikely that depositions will be needed, and that declarations (if needed at all) after written discovery would suffice.

**3. If the Plan does qualify as a church plan under ERISA, whether the church-plan exemption violates the Establishment Clause.** The defense argues, without genuine support, that the Supreme Court's opinion implicitly answers this issue. It does not. All references to church-affiliated nonprofits came in the context of a description of the statutory scheme, not a normative judgment on the Establishment Clause issue. So this issue remains to be litigated.

Of course, the Court need not decide the Establishment Clause issue if Plaintiffs prevail on the statutory arguments. But the Court likely will require briefing on this issue, after the discovery period, as part of the dispositive motion practice. This will avoid the additional delay that would arise from an across-the-board stay on the issue, in the event that the defense prevails on the statutory exemption. That means discovery—if any—must be taken on this issue contemporaneous with the other discovery. It seems very unlikely, however, that any factual discovery is required. In order to issue written discovery on this issue, Plaintiffs must file a motion to do so and explain its relevance and necessity. The Court would expect the federal government to participate in the final merits briefing, and if it wishes, to participate in discovery disputes (most likely by taking legal positions, rather than factual ones).

To repeat: this case must move forward on the liability issues. The Court will set a deadline to issue discovery requests and to respond to them. Conferrals must then take place within three business days of a request for conferral, and then additional back-and-forth conferral responses must be made three two business days of the prior response, each time presumptively limited to the issues raised in the prior response. That process will provide for a speedy conferral process that will narrow the issues. When impasse arises after the conferrals, then an appropriate discovery motion must be filed within five business days of impasse.

The flip-side of this discovery plan is that damages and class-propriety discovery shall not begin yet. Yes, that might cause substantial delay in entering judgment if liability is found, but it is very likely that the liability decision will greatly enhance the prospects of settlement. And the significant burdens of damages and class-propriety discovery outweigh the need for discovery (again, this

3

assumes the litigation hold that the parties discussed early in the case remains in place).

    These topics will be discussed at today's status hearing.

                                              ENTERED:

                                                      s/Edmond E. Chang
                                          Honorable Edmond E. Chang
                                          United States District Judge

DATE: November 9, 2017