**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA STAPLETON, et al on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the advocate plan,<br><br>          Plaintiffs,<br><br>  v.<br><br>ADVOCATE HEALTH CARE NETWORK AND SUBSIDIARIES, ET AL.,<br><br>          Defendants. | Civil Action No. 1:14-cv-01873 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................. 2

       A.     Procedural History and Settlement Negotiations. ................................... 2

       B.     Overview of the Settlement Agreement. .................................................. 5

              1.     Settlement Consideration. ............................................................. 6

              2.     Non-Monetary Equitable Consideration. ...................................... 6

              3.     Class. .............................................................................................. 7

              4.     Released Claims. ........................................................................... 7

              5.     Notice. ............................................................................................ 8

              6.     Attorneys' Fees. ............................................................................. 8

       C.     Reasons for the Settlement. ..................................................................... 8

III.   DISCUSSION ..................................................................................................... 9

       A.     The Standards for Preliminary Approval. ............................................... 9

       B.     This Settlement Is Within the Range of Reasonableness Justifying
              Preliminary Approval. ........................................................................... 11

              1.     The Settlement Provides Certain Relief and Eliminates the
                     Uncertainty of Prevailing on the Merits. ................................... 12

              2.     Class Counsel Endorse the Settlement. ...................................... 14

       C.     The Proposed Class Satisfies the Requirements for Certification
              Pursuant to Rule 23 of the Federal Rules of Civil Procedure. ............. 15

              1.     Provisional Certification of the Settlement Class is
                     Appropriate. ................................................................................ 15

              2.     The Class Satisfies the Requirements of Rule 23(b)(1) and
                     (b)(2). .......................................................................................... 17

       a.      Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members ................................................. 17

       b.      Rule 23(b)(2): Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate ............................................... 19

  D.     Rule 23(g) Is Satisfied. ...................................................................... 19

  E.     The Proposed Notice Plan Satisfies the Due Process Requirements of Rule 23. ......................................................................................... 19

  F.     Proposed Schedule. .......................................................................... 20

IV.   CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Advocate Health Care Network v. Stapleton*,
  137 S. Ct. 1652 (2017) ............................................................................ 3, 4, 13

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) .......................................................... 9, 10, 14, 15

*Barragan v. Evanger's Dog & Cat Food Co.*,
  259 F.R.D. 330 (N.D. Ill. 2009) ............................................................... 16

*Boyd v. Coventry Health Care, Inc.*,
  299 F.R.D. 451 (D. Md. 2017) .................................................................. 20

*Brieger v. Tellabs, Inc.*,
  245 F.R.D. 345 (N.D. Ill. 2007) ........................................................... 16, 17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................. 11

*Depoister v. Mary M. Holloway Found.*,
  36 F.3d 582 (7th Cir. 1994) ..................................................................... 11

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) .................................................................... 10

*Flanagan v. Allstate Ins. Co.*,
  242 F.R.D. 421 (N.D. Ill.), *modified*, 242 F.R.D. 434 (N.D. Ill. 2007) ................................. 16

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ............................................. 11

*Griffith v. Providence Health & Servs*,
  2:14-cv-01720 (W.D. Wash. 2014) ................................................................ 20

*Hispanics United v. Vill. of Addison, Ill.*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................... 10, 11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ......................................................... 14

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
  No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................... 14, 15

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................... 11

*Kolinek v. Walgreen Co.*,
　　311 F.R.D. 483 (N.D. Ill. 2015) ................................................................ 14, 16

*Ledford v. City of Highland Park*,
　　No. 00 C 4212, 2000 WL 1053967 (N.D. Ill. July 31, 2000) ................................................ 10

*Medina v. Catholic Health Initiatives*,
　　877 F. 3d 1213 (10th Cir. 2017) ................................................................ 13

*Mullane v. Cent. Hanover Bank Tr. Co.*,
　　339 U.S. 306 (1950) ................................................................ 20

*Neil v. Zell*,
　　275 F.R.D. 256 (N.D. Ill. 2011) ................................................................ 18

*Officers for Justice v. Civil Serv. Comm'n*,
　　688 F.2d 615 (9th Cir. 1982) ................................................................ 11

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
　　390 U.S. 414 (1968) ................................................................ 11

*Rosario v. Livaditis*,
　　963 F.2d 1013 (7th Cir. 1992) ................................................................ 16, 17

*Scholes v. Stone, McGuire & Benjamin*,
　　839 F. Supp. 1314 (N.D. Ill. 1993) ................................................................ 10

**Statutes**

29 U.S.C. § 1001, *et seq.* ................................................................ 1

29 U.S.C. § 1002(33) ................................................................ 1

ERISA ................................................................ 3, 5, 13

**Rules**

Fed. R. Civ. P. 23 ................................................................ 17, 18

Fed. R. Civ. P. 23(a) ................................................................ 15

Fed. R. Civ. P. 23(a)(2) ................................................................ 16

Fed. R. Civ. P. 23(b)(1) ................................................................ 1, 7, 17

Fed. R. Civ. P. 23(b)(1) ................................................................ 15, 17, 18

Fed. R. Civ. P. 23(b)(1)(A) ................................................................ 18

Fed. R. Civ. P. 23(b)(1)(B) ................................................................................18

Fed. R. Civ. P. 23(b)(2) ............................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ..................................................................................1

Fed. R. Civ. P. 23(c)(2) ..................................................................................19

Fed. R. Civ. P. 23(e) ..................................................................................9, 10

Fed. R. Civ. P. 23(g) ..................................................................................19

Fed. R. Evid. 408 ..................................................................................5

**Other Authorities**

David F. Herr, *Annotated Manual for Complex Litigation* (*Fourth*) (2017) ..............................10

*Manual for Complex Litigation* (1977) ..................................................................10

*Manual for Complex Litigation (Fourth)* (2004) ..........................................................9

3B *Moore's Federal Practice* (2d ed. 1978) ..............................................................10

*Newberg On Class Actions*, Vol. 3 (5th ed. 2014) ..................................................20

Plaintiffs Maria Stapleton, Judith Lukas, Sharon Roberts, and Antwain[1] Fox ("Plaintiffs" or "Named Plaintiffs"), by and through their attorneys, respectfully move the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")[2] attached hereto as Exhibit 1;[3] (2) preliminarily certifying the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, payment of attorneys' fees and expenses, and grant of incentive awards to the four named Plaintiffs. While Defendants do not oppose the relief sought in this Preliminary Approval Motion, they do not agree with all averments stated in this Memorandum.

## I.    INTRODUCTION

This Settlement resolves the claims of Plaintiffs in this case against all Defendants. The Complaint alleges that the non-profit healthcare system Advocate Health Care Network ("Advocate") denied ERISA[4] protections to the participants and beneficiaries of the Advocate Health Care Network Pension Plan (the "Advocate Plan" or the "Plan") by claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33); Class Action Complaint ("Compl."), ECF No. 1. This Settlement was reached by the parties after arm's-length negotiations with a mediator, and represents a good result for the proposed Settlement Class of participants and beneficiaries of the Plan. Under the Settlement, Advocate guarantees to

---

[1] Antwain Fox was inadvertently named in the Complaint as "Antoine Fox."

[2] A copy of the Settlement Agreement is attached as Exhibit 1 to this Memorandum in Support of Unopposed Motion for Preliminary Approval of Settlement Agreement ("Preliminary Approval Motion"). Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

[3] All references to "Exhibit" or "Ex." are to the exhibits attached to this Preliminary Approval Motion and filed concurrently herewith.

[4] "ERISA" is a reference to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

the Settlement Class, for a period of ten (10) years beginning on January 10, 2018, that the Plan's Trust will have sufficient funds to pay the Settlement Class the level of benefits stated in the Plan, as it is amended from time to time. Advocate will retain the right to amend, freeze, or terminate the Plan, but during that ten-year period no amendment or termination will result in a reduction of a Settlement Class Member's Accrued Benefit. Should a corporate transaction occur where the Plan's assets and liabilities covering Settlement Class Members transfer to a successor, Advocate will cause the successor to honor this guarantee commitment.

The Settlement also provides a different form of relief to certain former participants with between three (3) and five (5) years of service whose benefits have not vested under the terms of the Plan. The Settlement provides for a one-time payment of three hundred dollars ($300.00) to former participants in the Plan who terminated employment on or after January 1, 2013, and on or before September 1, 2017, and who completed at least three (3) but less than five (5) years of vesting service (the "Former Participant Vesting Claimants").

Additional Settlement terms provide, for a period of ten (10) years from January 10, 2018, that Advocate will incorporate certain ERISA-like provisions in the Plan, including maintaining a funding policy, making available for the Plan's participants information about the Plan and their vested or non-vested account balances, a claims review procedure, and certain other disclosure and administrative provisions.

## II.     BACKGROUND

### A.     Procedural History and Settlement Negotiations.

On March 17, 2014, Plaintiffs Maria Stapleton, Judith Lukas, Sharon Roberts, and Antwain Fox, participants or former participants in the Advocate Plan, filed a putative class action complaint in this Court against Advocate and various other corporate and individual

2

defendants, alleging violations of ERISA. Compl., ECF No. 1. Plaintiffs are represented by Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC (collectively, "Class Counsel"); Plaintiffs are also represented by Stephan Zouras, LLP, which serves as local counsel.

The Complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plan, which is a defined benefit pension plan sponsored by Advocate, by claiming that the Plan qualifies as an ERISA-exempt "church plan." The Complaint further alleges that asserting this exemption caused Defendants to deny the Plan's participants the protections of ERISA. These allegations included, among other alleged violations: underfunding the Plan; failing to furnish Plaintiffs or any member of the class with a Pension Benefit Statement, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices in compliance with ERISA; and violation of ERISA's vesting rules.

Defendants moved to dismiss the Complaint, ECF No. 34, and on December 31, 2014, the Court denied the motion to dismiss, ruling as a matter of law that an ERISA-exempt "church plan" must be established by a church. Memorandum Opinion and Order entered 12/31/14, ECF No. 64. On January 21, 2015, the Court granted Defendants leave to file an interlocutory appeal of that ruling and stayed proceedings pending the appeal. ECF No. 76. The Seventh Circuit Court of Appeals affirmed the District Court's decision on March 17, 2016; however, the Supreme Court then accepted review of the Seventh Circuit's decision. After oral argument on March 27, 2017, the Supreme Court issued its decision on June 5, 2017, holding that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans, though they still had to satisfy other conditions. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017) ("*Advocate*"). The Supreme Court did not decide Plaintiffs' other theories of liability. While Plaintiffs advance other strong arguments and theories not decided by

3

the Supreme Court's opinion, it nevertheless is true that Plaintiffs' case was negatively impacted by that decision.

Following the *Advocate* decision, on July 13, 2017, the Parties reported to the Court at a status conference that they were prepared to resume active litigation. ECF No. 125. Subsequently, before returning to litigation, the parties agreed to attempt to settle the case through mediation. On August 23, 2017, the Court continued further proceedings in the case for 60 days to allow for mediation (ECF No. 134), and the parties proceeded to mediation on September 15, 2017, with the assistance of an experienced JAMS mediator in hopes of resolving the case. Decl. of Lynn Lincoln Sarko in Supp. of Pls.' Unopposed Mot. for Prelim. Approval of Settlement Agreement ("Sarko Decl.") ¶¶ 4-5. The parties appeared before nationally-renowned mediator Robert A. Meyer, Esq., of JAMS in Chicago, Illinois. Sarko Decl. ¶ 5. Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption. *Id.*; *see also* Ex. 1 §§ 2.7, 10.1.1. The matter was not resolved at the September 15, 2017 mediation, but the parties agreed to continue settlement discussions, and the Court, at the parties' request, continued proceedings until early January, 2018 to allow for further settlement discussions. Sarko Decl. ¶ 6; ECF No. 144. The Court simultaneously set a schedule for answering the Complaint and proceeding with discovery should settlement not be reached. *Id.*

After further negotiations with the assistance of Mr. Meyer, the parties met for an additional mediation session in New York on December 13, 2017. Once again, the parties were not able to settle the case at that mediation Sarko Decl. ¶ 7. At the urging of Mr. Meyer, the parties continued their discussions, with Mr. Meyer continuing in the role of mediator, and the parties finally accepted a mediator's proposal and reached an agreement in principle to settle the

case. *Id.* ¶ 8. On January 10, 2018, the parties signed a Term Sheet containing the preliminary terms resolving this matter. *Id.* The Settlement Agreement now before the Court, Ex. 1, is a comprehensive agreement based on the Term Sheet. Sarko Decl. ¶ 9. It was executed by all parties on February 16, 2018. *Id.* The Settlement is the result of protracted, lengthy arm's-length negotiations between the parties. *Id.* The process was thorough, adversarial, and professional. *Id.*

Prior to instigating suit, and throughout the course of the litigation and the parties' negotiations, Class Counsel worked with the Named Plaintiffs to investigate the facts, circumstances, and legal issues associated with the allegations and defenses in the action. *Id.* ¶ 9. Class Counsel's investigation included, *inter alia*, (a) inspecting, reviewing, and analyzing financial statements, corporate records, and other documents publicly available and/or produced by Defendants or otherwise relating to Defendants, the Plan, and the administration and funding of the Plan; (b) reviewing confidential documents produced by Defendants and protected by Fed. R. Evid. 408 during mediation discovery; (c) reviewing, analyzing and researching the applicable law with respect to the claims asserted in this case and the possible defenses thereto; and (d) researching and analyzing governmental and other publicly-available sources concerning the Defendants and the industry. *Id.* ¶ 11. During the mediation, Defendants also provided Plaintiffs with confidential copies of the Advocate Health Care Network Pension Plan Actuarial Valuation Reports for 2014, 2015, 2016, and 2017, which Plaintiffs reviewed with their actuarial expert. Plaintiffs' expert confirmed that the actuarial reports reflect a level of funding of vested participants' benefits under the Advocate Plan that would satisfy or exceed ERISA requirements. Sarko Decl. ¶ 11.

**B.      Overview of the Settlement Agreement.**

The following summarizes the principal terms of the Settlement. *See* Ex. 1.

1.     **Settlement Consideration.**

Under the Settlement, Advocate guarantees to the Settlement Class, for a period of ten

(10) years beginning on January 10, 2018, that the Plan's Trust will have sufficient funds to pay

the Settlement Class the level of benefits stated in the Plan, as it is amended from time to time.

Settlement Agreement § 7.1.2.  Should a corporate transaction occur where the Plan's assets and

liabilities covering Settlement Class Members transfer to a successor, Advocate will cause the

successor to honor this commitment.  *Id.* § 7.1.3.  While Advocate will retain the right to amend,

freeze, or terminate the Plan, for a period of ten (10) years no amendment or termination will

result in a reduction of a Settlement Class Member's Accrued Benefit.  *Id.* § 8.2.  For a period of

ten (10) years, if the Plan is merged or consolidated with another plan, participants and

beneficiaries who are Settlement Class members will be entitled to the same or a greater Accrued

Benefit post-merger or after a consolidation event as they enjoyed before the merger or

consolidation.  *Id.* § 8.1.

The Settlement also provides a different form of relief to certain former participants

whose benefits are not vested under the terms of the Plan because they were employed by

Advocate for more than three (3) but less than five (5) years.  These former participants will not

have vested rights under the Settlement, but the Settlement provides for a one-time payment of

three hundred dollars ($300.00) each to former participants in the Plan who terminated

employment on or after January 1, 2013, and on or before September 1, 2017, and completed at

least three (3) but less than five (5) years of vesting service (the "Former Participant Vesting

Claimants").  Settlement Agreement at § 7.1.4.

2.     **Non-Monetary Equitable Consideration.**

The Settlement establishes equitable provisions that mimic certain provisions of ERISA

concerning plan administration, summary plan descriptions, notices, and the Plan's claim review

procedure. *Id.* §8.4. For a period of ten (10) years, Plan participants will have access to information about the retirement benefits that they have accrued. *Id.* § 8.4. The Plan will name a Plan fiduciary (*id.* §8.4.1); provide for how administrative responsibilities are allocated and Plan amendments are made (*id.*); describe the calculation of benefits (*id.)*; and provide a joint and survivor annuity (*id.* §8.4.1). Advocate will maintain a funding policy (*id.* § 8.4.2); make available for the Plan's participants information about the Plan (*id.* §8.4.3) and their vested or non-vested account balances (*id.* § 8.4.4); and provide a claims review procedure (*id.* § 8.4.5).

### 3. Class.

The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2). Ex. 1 § 2.2.2. The Settlement Class is defined as: "All persons who, as of the Settlement Date, are or were Plan participants, whether vested or non-vested, and their beneficiaries." *Id.* § 1.26. The "Settlement Date" is the date on which the Settlement has been approved by a Final Order of this Court that has become Final. *Id.* § 1.27.

### 4. Released Claims.

The Settlement Agreement provides for releases by and among Plaintiffs, Defendants, and certain other non-parties related to the litigation. *Id.* §§ 3.1-3.4. The persons to be released by Plaintiffs are defined as the "Releasees" and are enumerated at section 1.24 of the Settlement Agreement. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to the sponsorship, funding, maintenance, operation or termination of, or distributions from, the Plan; provided that Plaintiffs will retain their rights under state law to pursue claims for individual benefits. *Id.* § 3.1. Plaintiffs, the Settlement Class, and Class Counsel will be released from claims relating to the institution and prosecution of this case. *Id.* § 3.4.

5.      **Notice.**

The draft [Proposed] Preliminary Approval Order, attached as Exhibit 2, provides for the following notices: (a) a mailed Class Notice, to be mailed to the last known address of members of the Settlement Class; and (b) internet publication of the Settlement Agreement and Class Notice at http://www.kellersettlements.com and www.cohenmilstein.com/advocate-settlement. Ex. 1 § 2.2.3-4.  Advocate will pay the cost of notice to the Settlement Class.  *See* Ex. 2 ([Proposed] Order Preliminary Approving the Settlement), Ex. 3 ([Proposed] Class Notice); *see also* Ex. 1 § 2.2.3.

6.      **Attorneys' Fees.**

Class Counsel will seek district court approval to receive an award of reasonable out-of-pocket expenses and attorneys' fees.  Ex. 1 § 7.1.5.  Class Counsel also intend to ask the Court to award incentive fees to the four Named Plaintiffs of $10,000.00 each, in light of their substantial contributions to the litigation, including: collecting and producing documents; maintaining contact with Class Counsel; reviewing and approving the Complaint; staying abreast of settlement negotiations; attending meetings in preparation for oral arguments and attending oral arguments in Chicago and Washington, and advising on the settlement of this litigation.  *Id*.; Sarko Decl. ¶ 12.  The Settlement Class shall be notified of a proposed incentive fee in the Class Notice.  *See* Ex. 3. Class Counsel will seek no more than $1,250,000 in total for the award of attorneys' fees, expenses and incentive payments.  Ex. 1 § 7.1.5.  Advocate will cause any such award to be paid ***in addition to*** the other monetary terms set forth in the Settlement Agreement, *id*. § 7.1.5, and will pay the costs of notice to the Settlement Class, *id.* § 7.2.

C.      **Reasons for the Settlement.**

Plaintiffs have entered into the Settlement with an understanding of the strengths and weaknesses of their claims.  This understanding is based on: (1) the dialog in mediation sessions

and other settlement discussions; (2) investigation and research; (3) the likelihood that Plaintiffs would prevail at trial; (4) the range of possible recovery; and (5) the substantial complexity, expense, and duration of litigation necessary to prosecute these actions through trial, post-trial motions, and likely appeal, and the significant uncertainties in predicting the outcome of this complex litigation. *See* Sarko Decl. ¶¶ 3, 5, 10, 13, 19. Having undertaken this analysis, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval. *Id.* ¶ 19.

### III. DISCUSSION

**A.    The Standards for Preliminary Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits. It provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment.[5] *See Manual for Complex Litigation (Fourth)* § 13.14 (2004). Before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given to class members in the manner directed by the court, a hearing must be held, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).

In determining whether to *preliminarily* approve a settlement, the Court is not charged with engaging in the rigorous analysis of the Settlement Agreement required for *final* approval, but rather conducts a preliminary review to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v.*

---

[5] A [Proposed] Order and Final Judgment is attached as Exhibit 4 to this memorandum.

*Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felsen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). As a prominent treatise explains:

> At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval. . . . ("In evaluating a settlement for preliminary approval, the court determines whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval") . . . After a preliminary determination as to the fairness of a proposed settlement, the court must direct notice to class members and hold a final fairness hearing before formally approving the settlement.

David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2017) (citations omitted); *see also Ledford v. City of Highland Park*, No. 00 C 4212, 2000 WL 1053967, at *2 (N.D. Ill. July 31, 2000) ("The . . . question is whether the proposed consent order falls within the range of reasonableness such that it can preliminarily be found to be a fair settlement.").

This low threshold acknowledges that the final approval hearing is the stage at which courts "adduce all information necessary to enable [them] intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.'" *Armstrong*, 616 F.2d at 314 (citing *Manual for Complex Litigation* § 1.46, at 57 (1977)).[6] At preliminary approval, a court's role does not entail "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889

---

[6] At the Final Approval Hearing, the Court has the discretion under Rule 23(e) to finally approve the Settlement if the Court finds it to be fair, adequate, and reasonable to the Class. The Seventh Circuit has set forth an eight-factor test to determine the fairness of a class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the degree of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *See Armstrong*, 616 F.2d at 314 (quoting 3B *Moore's Federal Practice* ¶ 23.80(4), at 23-521 (2d ed. 1978)); *see also Hispanics United v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1149-50 (N.D. Ill. 1997); *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1314 (N.D. Ill. 1993).

10

(7th Cir. 1985) (collecting cases). A settlement does necessarily require a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). An evaluation of the costs and benefits of settlement must also be tempered by the recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Finally, it is well-established that there is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (discussing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). In *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995), Judge Guzman recognized:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id*. at *1 (citations omitted); *see also Hispanics United*, 988 F. Supp. at 1149 ("Compromise is particularly appropriate in complex class actions.").

**B.      This Settlement Is Within the Range of Reasonableness Justifying Preliminary Approval.**

Applying these principles, the Settlement Agreement easily meets the "range of reasonableness" test for preliminary approval, particularly in light of the strong public policy in

favor of settling class actions. The Settlement Agreement presents a strong case for sending out notice and proceeding with a final fairness hearing: it takes into account the risks of litigation in light of the Supreme Court's ruling in *Advocate*; it was reached after extended and contentious negotiations involving the parties and their counsel, assisted by a skilled mediator; it provides a valuable guarantee, a payment to certain non-vested claimants who would otherwise receive no benefit, and informational benefits to the Settlement Class; it proposes reasonable limits on attorney compensation and class representative incentive fees; and it does not prefer any Settlement Class members over others.

> **1.     The Settlement Provides Certain Relief and Eliminates the Uncertainty of Prevailing on the Merits.**

The Complaint alleges that Defendants violated ERISA by, among other things, underfunding the Plan. In light of Defendants' demonstration of the Plan's current and historic funding status, settlement negotiations centered on Plaintiffs' other theories of liability, and resulted in Plaintiffs securing a funding guarantee and the additional ERISA-like benefits described below. The Settlement Agreement provides for funding that benefits vested Settlement Class members should the Plan Trust be insufficient to pay benefits within the next ten years. Ex. 1 §§ 7.1.1-2. Moreover, the Settlement Agreement ensures that this guarantee will survive a corporate transaction in which the Plan's assets and liabilities covering Settlement Class Members transfer to a successor, by requiring Advocate to cause the successor to honor the guarantee. *Id.* § 7.1.3. And the Settlement provides a cash settlement payment to participants who have no vested claim unless they fully prevail at trial. Id. § 7.1.4. This Settlement thus virtually eliminates any underfunding risk to vested participants for its ten-year duration, while mitigating the risks and uncertainty of litigation.

This risk mitigation is particularly significant in light of the fact that the United States Supreme Court, reviewing a decision in this case, ruled this past June on an important issue in this case—namely, that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans, as long as they meet all other qualifications for the exemption. *Advocate*, 137 S. Ct. at 1663. Though Plaintiffs advance other strong arguments and theories not reached by the Supreme Court, Plaintiffs' case arguably was negatively impacted by the Supreme Court's decision. In addition, late last year the Tenth Circuit Court of Appeals decided *Medina v. Catholic Health Initiatives*, 877 F. 3d 1213 (10th Cir. 2017), which rejected several other theories of ERISA liability in a different "church plan" case. *Medina* was decided on different facts than those before this Court; Plaintiffs believe its legal analysis was flawed;[7] and in any event it is not binding on this Court in this case. It does, however, illustrate the litigation risk that this Settlement avoids.

This Settlement is thus particularly favorable for the proposed class, in light of this uncertain and high-stakes backdrop. *See* Sarko Decl. ¶¶ 2, 3, 19.

Moreover, the Settlement establishes equitable provisions that mimic certain provisions of ERISA. Ex. 1 § 8. For instance, for a period of ten (10) years, Plan participants will have access to Plan statements about the retirement benefits that they have accrued. *Id.* § 8.4. The Plan will name a Plan fiduciary (*id*. §8.4.1); provide for how administrative responsibilities are allocated and Plan amendments are made (*id.*); describe the calculation of benefits (*id.)*; and provide a joint and survivor annuity (*id*. §8.4.1). Advocate will maintain a funding policy (*id.* § 8.4.2); make available for the Plan's participants information about the Plan (*id.* §8.4.3)

---

[7] For example, *Medina* simply adopted a dictionary definition of the critical term "maintain," ignoring the ERISA statutory context in which it was used, 877 F.3d at 1225-1226, and further ignoring the Supreme Court's own direction in *Advocate* as to the importance and meaning of the term 'maintain." *Advocate,* 137 S.Ct. at 1661.

13

and their vested or non-vested account balances (*id.* § 8.4.4); and provide a claims review procedure (*id.* § 8.4.5).

        **2.**      **Class Counsel Endorse the Settlement.**

Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See, e.g., In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 325 (In determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel."). Here, Class Counsel—two law firms that are nationally recognized for their expertise in employee benefits law and church plan litigation—believe that this Settlement is fair, reasonable, and adequate in light of the circumstances in this case. Sarko Decl. ¶¶ 13-19.

Their conclusion is the product of extensive, informed, arm's-length negotiations. *Id.* ¶¶ 5, 9. The parties' negotiations were overseen by an experienced mediator, Robert Meyer, who has mediated many ERISA and retirement plan cases, including cases contesting the applicability of the church plan exemption. *Id.* ¶ 5. Class Counsel relied on Mr. Meyer's proposal for achieving settlement after considering all relevant factors. *Id.* ¶ 8.

Finally, it is well-recognized that named plaintiffs are entitled to an incentive fee to induce them to participate in the lawsuit. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041-42 (N.D. Ill. 2011) (collecting cases) (noting the mean incentive fee is approximately $16,000). Such enhancements compensate class representatives for their time, effort, and willingness to play an active role if the parties continued litigating through trial. *Id.*; *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Here, each of the Named Plaintiffs made substantial contributions to the litigation, including: collecting and producing documents; maintaining contact with Class Counsel; reviewing and approving the

14

Complaint; staying abreast of settlement negotiations; attending meetings in preparation for oral arguments and attending oral arguments in Chicago and Washington, D.C.; and advising on the settlement of this litigation. Sarko Decl. ¶ 12. These actions provided great benefit to the members of the Settlement Class and thus the requested awards to Named Plaintiffs are appropriate. *See id.*

At this juncture, the Court need not consider the ultimate question: whether the proposed Settlement is fair, reasonable, and adequate. However, preliminary consideration of factors considered by courts in this Circuit in granting final approval lends support to Plaintiffs' belief that this settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 310. For this and all the foregoing reasons, the Settlement deserves the Court's preliminary approval.

## C. The Proposed Class Satisfies the Requirements for Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs request that the Court preliminarily certify the Class for settlement purposes only, under Federal Rule of Civil Procedure 23(a) and 23(b)(1) and/or (2). As set forth above, the Class is defined as "All persons who, as of the Settlement Date, are or were Plan participants, whether vested or non-vested, and their beneficiaries."[8] Ex. 1 § 1.26. Plaintiffs also move the Court to preliminarily appoint Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P. as Class Counsel.

### 1. Provisional Certification of the Settlement Class is Appropriate.

A settlement class must meet the requirements for class certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy). *In re Sears, Roebuck & Co.*, 2016 WL 772785, at *8-9. These requirements are readily satisfied here.

---

[8] The "Settlement Date" is the date on which the Settlement has been approved by a Final Order of this Court that has become Final. Ex. 1 § 1.27.

*Numerosity.* The first requirement, numerosity, "is typically satisfied where there are at least forty members of a putative class." *Kolinek*, 311 F.R.D. at 491, *appeal dismissed* (Jan. 27, 2016), *appeal dismissed* (Feb. 1, 2016), *appeal dismissed* (Feb. 3, 2016). *See also, e.g.*, *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 427 (N.D. Ill.), *modified*, 242 F.R.D. 434 (N.D. Ill. 2007) ("permissive joinder is usually deemed impractical where the class members number 40 or more"). Here, Plaintiffs allege that Advocate has approximately 33,000 employees, a substantial number of which are participants in the Plan (Compl. ¶ 110), and for purposes of this Settlement, Defendants acknowledge that the putative class would satisfy the numerosity requirement (Ex. 1, §2.2.2(b)). As all of the participants and beneficiaries are members of the Class, the Class is so numerous that joinder of all members is impracticable.

*Commonality.* The commonality requirement set forth in Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) ("Commonality requires that there be at least one question of law or fact common to the class.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The common questions of law and fact include, for example, (1) whether the Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA. *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 349 (N.D. Ill. 2007) (finding that "because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact" and therefore that the putative ERISA class met the commonality requirement).

*Typicality.* Moreover, Plaintiffs' claims are typical of Class Members' claims because all claims are based on Defendants' alleged wrongful conduct and all members of the Class were

similarly affected by such conduct. The requirement of typicality is therefore satisfied. *See Rosario*, 963 F.2d at 1018 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."); *see also Brieger*, 245 F.R.D. at 349 (finding that typicality is met where a putative ERISA class "seek[s] relief on behalf of the plan . . . for alleged fiduciary violations as to the Plan").

*Adequacy.* Rule 23 also "requires that the representative parties fairly and adequately represent the class. A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* Here, Plaintiffs, as the proposed class representatives, are adequate, as their claims are typical of the claims of the other members of the Class. Two, Judith Lukas and Maria Stapleton, are vested participants in the Plan, and the other Named Plaintiffs have vesting claims. Their claims, like the claims of the other Class members, arise from the same event, practice and/or course of conduct—namely, Defendants' failure to maintain the Plan in accordance with ERISA. Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' conduct, and all Class members seek the same relief on behalf of the Plan. *Brieger*, 245 F.R.D. at 356 (where a putative ERISA class "bring[s] claims on behalf of the Plan, not for individual relief. . . . there is no inherent conflict between the claims of the named plaintiffs and those of the putative class" and the named plaintiffs satisfy the "adequacy" requirement).

### 2. The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).

#### a. Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate

actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interest of absent members. Fed. R. Civ. P. 23(b)(1)(A) and (B).

There is a clear risk of inconsistent adjudication and incompatible standards here: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plan is ERISA-regulated, and the other holding that it is not. *See, e.g., Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) ("ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole (as it is here), a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs."). Courts in this District have certified classes under Federal Rule of Civil Procedure 23(b)(1) in ERISA cases for those very reasons. *Id.* ("Numerous ERISA actions in this district have been certified under 23(b)(1).") (collecting cases).

Moreover, the Advisory Committee Notes on Rule 23 specifically acknowledge that actions which "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries"—*i.e.*, an action like the present action—"should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment. As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA action.

      **b.**     **Rule 23(b)(2): Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate**

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis. Specifically, Plaintiffs allege that Defendants underfunded the Plan and failed to furnish Plaintiffs or any member of the class with required statements and reports. Compl. ¶¶ 145-46, 139-152.

Although Defendants deny the allegations of the Complaint and contend that defenses exist for every claim, each of Plaintiffs' allegations, if proven, would harm the entire class as a group. This is further underscored by the fact that Plaintiffs not only seek to represent themselves and all others similarly situated, but also seek to represent the Plan itself. As a result, certification of the proposed class under Rule 23(b)(2) is also appropriate in this ERISA action.

**D.**     **Rule 23(g) Is Satisfied.**

Federal Rule of Civil Procedure 23(g) requires that the Court examine the capabilities and resources of class counsel. Class Counsel have explained above the claims brought in this action, and the time and effort already expended in connection with this litigation. Moreover, Class Counsel are among the leading litigators of ERISA actions on behalf of plaintiffs, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Sarko Decl. ¶¶ 13-16. Class Counsel thus satisfy the requirements of Rule 23(g).

**E.**     **The Proposed Notice Plan Satisfies the Due Process Requirements of Rule 23.**

In order to satisfy due process considerations, and pursuant to Rule 23(c)(2), notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested

19

parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Here, the proposed Class Notice describes the Settlement in plain English; the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate; the maximum attorneys' fees and expenses and incentive fees for the named Plaintiffs that may be sought; the procedure for objecting to the Settlement; and the date and place of the Fairness Hearing.

With the Court's approval, the Class Notice will be mailed to each member of the Settlement Class, no later than 60 days prior to the Fairness Hearing. Last known addresses of the members of the Class are available from the Plan's record-keepers. In addition, the Settlement Agreement and Class Notice will be published online at www.kellersettlements.com and www.cohenmilstein.com/Advocate-settlement. These proposed forms of notice will fairly apprise members of the Class of the Settlement Agreement and their options with respect thereto, and therefore fully satisfy due process requirements. *See Newberg On Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014). Similar notice plans in ERISA settlements have been approved. *Griffith v. Providence Health & Servs*, 2:14-cv-01720 (W.D. Wash. 2014); *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 457 (D. Md. 2017).

## F.    Proposed Schedule.

The parties have agreed to the following set of deadlines, the specific dates of which will be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice | 10 days after entry of the Preliminary Approval Order |
| Deadline for Mailing of Class Notice and Posting Class Notice to Website | 30 days after entry of the Preliminary Approval Order |

| Deadline for Filing Plaintiffs' Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Plaintiffs | 46 days prior to the Proposed Fairness Hearing |
| Deadline for the Settlement Class to Comment upon or Object to the Proposed Settlement | 28 days prior to the Proposed Fairness Hearing |
| Deadline for Filing Plaintiffs' Reply in Support of Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Plaintiffs, and for the Parties to Respond to Any Comments or Objections | 7 days prior to the Proposed Fairness Hearing |
| Proposed Fairness Hearing | On or after June 26, 2018 [9] |

## IV.  CONCLUSION

Class Counsel respectfully request that the Court grant Plaintiffs' motion and (i) enter the proposed Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) set a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and expenses and for Incentive Fees for the Plaintiffs; and (b) file their motion for final approval of the proposed Settlement.

Dated: February 16, 2018

Respectfully submitted,

KELLER ROHRBACK, L.L.P.

By */s/ Christopher Graver*
Ron Kilgard
rkilgard@kellerrohrback.com
Christopher Graver
cgraver@kellerrohrback.com
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.:  602-248-0088
Fax:  602-248-2822

[9] Pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

KELLER ROHRBACK, L.L.P.
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Erin M. Riley
eriley@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel.: 206-623-1900
Fax: 206-623-3384

COHEN MILSTEIN SELLERS
  & TOLL, PLLC
Karen L. Handorf
khandorf@cohenmilstein.com
Michelle Yau
myau@cohenmilstein.com
Mary J. Bortscheller
mbortscheller@cohenmilstein.com
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel.: 202-408-4600
Fax: 202-408-4699

STEPHAN ZOURAS, LLP
James B. Zouras
jzouras@stephanzouras.com
Ryan F. Stephan
rstephan@stephanzouras.com
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Tel.: 312-233-1550
Fax: 312-233-1560

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2018, I electronically filed the above with the Clerk of the Court using the CM/ECF system, which in turn sent notice to all counsel of record.

Dated: February 16, 2018

*/s/ Christopher Graver*
Christopher Graver